## ASSOCIATED FURNITURE CORPORATION v. UNITED STATES.

No. J—350.

Court of Claims.

Oct. 20, 1930.

Thomas G. Haight, of Jersey City, N. J. (Robert H. Montgomery and J. Marvin Haynes, both of Washington, D. C., and James O. Wynn, Jr., and Roswell Magill, both of New York City, on the brief), for plaintiff.

Arthur J. Iles, of Indianapolis, Ind., and Charles B. Rugg, Asst. Atty. Gen., for the United States.

Argued before BOOTH, Chief Justice, and WILLIAMS, WHALEY, LITTLETON, and GREEN, Judges.

WILLIAMS, Judge.

This is a suit to recover the sum of $4,089, with interest, which amount was on July 10, 1927, paid by the plaintiff to the collector of internal revenue at Wilmington, Del., as a special excise tax with respect to the carrying on or doing business for the fiscal year beginning July 1, 1925.

The challenged tax was assessed and collected under authority of section 700 of the Revenue Act of 1924 (43 Stat. 325), the relevant part of which reads as follows:

"(a) On and after July 1, 1924, in lieu of the tax imposed by section 1000 of the Revenue Act of 1921—

"(1) Every domestic corporation shall pay annually a special excise tax with respect to carrying on or doing business, equivalent to $1 for each $1,000 of so much of the fair average value of its capital stock for the preceding year ending June 30 as is in excess of $5,000. In estimating the value of capital stock the surplus and undivided profits shall be included. * * *"

The purpose of the organization and incorporation of the plaintiff was to do the following things: "The manufacturing, buying, and selling, or otherwise dealing or trading in furniture, fixtures, furnishings, and other kinds of goods, wares, and merchandise; the acquisition of the good will, business, stock, assets, etc., of any person, firm, or association, or corporation doing business of a character similar to that of the plaintiff; the acquisition, ownership, and disposal of the shares of stock or voting trust certificates, participation certificates, or other certificates issued in respect of the shares of stock of any class of other corporations or associations; the issuance of its own stock of any class, notes, bonds, or other obligations in payment or exchange for any stock or interest therein, or any notes, bonds, or other securities or contracts of any character; the purchase, ownership, and operation of real estate, improved or unimproved," etc.

It is not contended that the plaintiff was not engaged in carrying on or doing business during the fiscal year beginning July 1, 1925, and ending July 30, 1926, but that it was not

so engaged during the preceding year ending June 30, 1925.

It is contended that plaintiff's activities between its incorporation, June 2, 1925, and July 1, 1925, were confined to its organization meeting on June 2d and the meeting of its board of directors on June 15th, and that nothing was done at these meetings other than such routine acts as were necessary to the completing of its corporation organization.

If the plaintiff prior to July 1, 1925, did nothing further than perform such acts as were necessary to complete its corporate organization, it is not subject to the tax imposed for the year beginning July 1, 1925, as subsection (b) of section 700 of the 1924 act provides: "The taxes imposed by this section shall not apply in any year to any corporation which was not engaged in business * * * during the preceding year ending June 30. * * * "

It is not required that a corporation, in order to be liable for the tax, should have been engaged in business the whole of the preceding year, article 28, of Regulations No. 64, providing: " * * * If it was in business even one day of the preceding year and one day of the taxable year it is subject to the tax."

█ The regulations (article 12) further provide: " * * * No particular amount of business is required to bring a company within the terms of the act."

The decided cases also lay down the same rule. Morrisdale Land Company v. United States, 66 Ct. Cl. 701; Edgar Estates Corporation v. United States, 65 Ct. Cl. 415; Chevrolet Motor Company v. United States, 64 Ct. Cl. 211.

The various activities of the plaintiff are stated in detail in the findings of fact, and it is not necessary to repeat them here. Findings 3 and 4 have to do with the activities of the plaintiff prior to July 1, 1925, and findings 5 and 10, with its transactions and acts subsequent to that date.

Plaintiff's activities subsequent to July 1, 1925, are material only in so far as they may be related to, or are component parts of, its activities during the preceding year, and throw light on whether or not such activities constitute the carrying on or doing business.

Do the acts performed by the plaintiff between the date of its incorporation June 2, 1925, to July 1, 1925, constitute the carrying on or doing business, or were they, as the plaintiff contends, nothing more than formal routine acts necessary to the completing of its corporate organization?

Article 12 of the regulations provides: "A corporation may complete its organization and sell its capital stock for cash without incurring liability, but other activities, such as entering into contracts for the purchase of property or construction of a plant are corporate business acts, and constitute doing business. In other words, it is not necessary that the company be actually engaged in the manufacture of its intended product or that it be actually creating profit or gain to incur liability. The *making of contracts,* buying of materials or machinery, constructing buildings, *employing and discharging of individuals,* are necessary business acts leading to the more profitable end of manufacturing certain products." (Italics ours.)

The plaintiff performed all necessary acts to complete its corporate organization, and did complete such organization prior to July 1, 1925. We think the plaintiff, also, between the date of its incorporation and July 1, 1925, engaged in other activities than such as were necessary to complete its organization, and that those activities constitute doing business within the meaning of the statute.

The purposes of the plaintiff's organization as stated in its certificate of incorporation include the "manufacturing, buying, and selling or otherwise dealing or trading in furniture, fixtures, furnishings, and other kinds of goods, wares, and merchandise; and the acquisition of the good will, business, stock, assets, etc., of any person, firm, or association, or corporation, doing business of a similar character, * * * and the issuance of its own or other obligations in payment or exchange for any stock or interest therein. * * * "

█ In pursuance of the purposes of its organization the plaintiff, by formal act of its directors, on June 15, 1925, acquired all the capital stock of six corporations engaged in business similar to that for the carrying on of which the plaintiff was organized, and issued its own stock in payment therefor. The plaintiff did not acquire the stock of these corporations as an investment. Its acquisition constitutes the carrying on or doing business. Orpheum Circuit, Inc., v. Reinecke (D. C.) 41 F.(2d) 524.

The plaintiff's board of directors on June 15, 1925, authorized and directed its officers to execute contracts on its behalf for the employment of managers and associate managers for its various stores for the period from

June 15, 1925, to December 31, 1928. These contracts were duly executed, and managers and associate managers were, as of that date, designated for all the stores, the stock of which had been acquired by the plaintiff.

The execution of these contracts and the employment of managers and assistant managers for its various stores were acts necessary to enable the plaintiff to carry out the purposes of its organization, and fall squarely within the terms of the regulations that "the making of contracts and the employment and discharging of individuals are necessary business acts. * * *"

The activities of the plaintiff above stated, the acquisition of the stock of various corporations, the making and entering into contracts with individuals as managers and associate managers of its stores from June 15, 1925, all of which acts were performed between the date of the plaintiff's incorporation, June 2, 1925, and July 1, 1925, were not formal routine acts necessary to the completion of the plaintiff's corporate organization. They were acts which constitute the carrying on or doing business.

The plaintiff makes the further contention that, should it be held that the plaintiff was engaged in business during the preceding year ending June 30, 1925, the tax for the fiscal year beginning July 1, 1925, should be based on the fair average value of such stock for such preceding year, and that, since the plaintiff was engaged in business for only a portion of that year, the fair average value of its stock would be that proportion which the number of days in which it was engaged in business bears to the total number of days in the fiscal year ended June 30, 1925. In support of this proposition One Liberty Street Realty & Securities Corporation v. Bowers (D. C.) 8 F.(2d) 278, is cited. In that case the taxpayer had during the preceding year issued additional stock, and the court held that the tax was improperly based on the value of the capital stock at the end of the year, but that it should be based upon the average value for the year.

In the instant case the plaintiff's capital stock was not increased, but remained the same throughout the time it was engaged in business during the preceding year ended June 30, 1925. There being no change whatever in the value of the plaintiff's capital stock during the year, the provision of the statute that the tax be based on the "fair average value" is not applicable.

This question was presented in Alaska Consolidated Canneries, Inc., v. United States, 66 Ct. Cl. 713. The court said: "In the present case the corporation was in existence only for the month of June in the year preceding the taxable period. There was no change whatever in the value of the stock from June 1 to June 30, 1925. Where there is no change in value, there is no occasion for determining the 'fair average value.' It is only in case of an increase or a decrease in value that the term used in the statute, 'fair average value,' has any importance."

It is the opinion of the court that plaintiff was carrying on or doing business during the fiscal year beginning July 1, 1925, within the meaning of section 700 of the Revenue Act of 1924, and that it was also engaged in business during the preceding year ending June 30, 1925. The taxes plaintiff seeks to recover were legally assessed and collected, and the claim for refund was properly rejected by the Commissioner of Internal Revenue.

Plaintiff's petition is dismissed. It is so ordered.